GEORGE G. WADDINGTON

*v.*

NATHAN W. BUZBY.

A, the confidential adviser of B, who was a woman eighty-three years of age, feeble in mind and body, nearly blind and scarcely able to realize her surroundings, prepared, with his own hand, a will for B to execute, by which he was appointed executor thereof, and more than one-half of the estate was bequeathed to his wife and son. He secured the absence of B's only surviving daughter, the mother's constant companion, and then, with the assistance of a servant, for whom a considerable legacy was provided, called the witnesses and superintended the execution of the paper. After the paper had been signed, the servant tied it up in the box where B's private papers were usually kept, after the manner in which the box had been previously tied. Twenty-three days before the execution of this paper, A, attended by the same servant, secretly, at night, while one of B's daughters was dying in the house, procured B to execute a similar instrument designed to give the same direction to her estate, through which execution B acted mechanically and apparently oblivious of that which was being done about her. A now offers the alleged will for probate.—*Held*, that the circumstances alluded to are *indicia* of undue influence which throw the burden of proving the free agency of B in making the will upon the proponent, and also that in such a case the unsupported testimony of B is not sufficient to justify the admission of the paper to probate.

On appeal from the Salem county orphans court.

*Mr. W. T. Hilliard* and *Mr. W. E. Potter*, for the appellant.

*Mr. C. H. Sinnickson*, for respondent.

THE ORDINARY.

This is a controversy touching the validity of the alleged last will of Ruth W. Buzby, deceased, which was propounded for probate by George G. Waddington, who is named in it as its executor, before the surrogate of Salem county, and rejected by the orphans court of that county.

It was insisted upon the part of the caveator below that the

execution of the paper was procured by the appellant and Martha Hancock by undue influence. The proofs show that at the time the paper was signed Mrs. Buzby was about eighty-three years old and subject to many of the infirmities of old age. She was feeble in body, memory and will, nearly blind, absent-minded, listless and indifferent to her surroundings, probably in the incipient stages of senile *dementia.*

The proponent was her man of business, to whom she entrusted the investment of her moneys and the collection of her income. In 1872 he had married her granddaughter, Mary B. Gaskill, who had been reared from infancy in her grandmother's household.

The testatrix had four children—Milton, who died in infancy; Mary, who never married, and died on March 29th, 1882; Beulah, who married one Gaskill, and now survives and is the mother of the proponent's wife; and Nathan, who died in 1852, leaving one son, who is the respondent in this suit and the caveator below.

Mrs. Buzby and her daughter Mary, and Martha Hancock, a servant who had been brought up from childhood by Mrs. Buzby, lived together until the death of Mary in 1882.

During Mary's last illness Beulah Gaskill came to her mother and undertook the management of the household in her sister's stead, and thereafter lived with her mother throughout the remainder of the mother's life.

Some eight or nine years before Mrs. Buzby died she executed a will that had been copied for her by one Aaron Fogg from a will that had been previously drawn for her by one Owen L. Jones. The recopy was made for the purpose of substituting the proponent, Waddington, as executor in the place of Owen Jones. Mr. Fogg says that he thinks Mrs. Buzby's daughter Mary was much more interested in this change than her mother was.

The testimony is meagre and unsatisfactory as to the disposition that this will made of Mrs. Buzby's property. Such information as can be gathered is to be found in the testimony of the proponent. It seems that by it a legacy of $1,200

Waddington v. Buzby.

was bequeathed to Mrs. Gaskill; that Nathan Buzby was to receive $100; that Mrs. Gaskill's daughters were not to receive anything except trifling specific legacies; that Mary Buzby was to have the residue of the estate, and that the proponent, George Waddington, was to be the sole executor.

By the paper now offered for probate, Mrs. Gaskill is to have $1,500 and certain articles of furniture, and three of her children are to have $100 each, and some articles of little value; Martha Hancock is to have $600 and some household furniture, which she is to take in lieu of any charges she may make for services; Nathan Buzby, the respondent in this appeal, is not to have anything; George Waddington, the proponent, is to be sole executor; his son is to have $600 and a silver cup, and his wife is to have the residue of the estate.

Outside of the household furniture, silverware &c., the estate is valued at $5,200, consequently the wife and child of the executor will together receive $2,800 in addition to a share of the household effects.

The will refers to Nathan Buzby in the following language:

" My grandson, Nathan W. Buzby, heired a legacy of one thousand dollars by the will of his grandfather, Asher Buzby. By failure of my co-executor, George M. Ward, I have been compelled to pay the greater part of said legacy out of my own resources, and this is the reason my said grandson, Nathan W. Buzby, is not mentioned as a legatee of this instrument."

It appears that Asher Buzby bequeathed $1,000 to be paid to his grandson Nathan when he should reach the age of twenty-one years, and, if he did not live to reach that age, to be paid to his cousin, Mary B. Gaskill, who is now the wife of the proponent, Waddington. George M. Ward and Ruth W. Buzby were appointed executor and executrix of that will. Nathan did not become of age for five or six years after his grandfather's death, and then George M. Ward had failed in business, and with his failure a large part of the legacy was lost. Nathan advised with counsel, and as a result of the advice he received, required his grandmother to make good the legacy to him by paying him more than $900. When the payment

Waddington v. Buzby.

was made, his aunt, Mary Buzby, was greatly annoyed, and said : " Nat, you have got all the money in the house but $10," but the grandmother, recognizing his legal right, said : " Take it, Nat, it belongs to you."

Many of the witnesses say that the grandmother did not cherish ill feeling to Nathan because of this enforcement of his rights, but that, on the contrary, she always expressed the most sincere affection for him. The proponent, on the contrary, says that he heard her declare that Nathan should never have a dollar of her property, and that when Mrs. Buzby requested him, the proponent, to prepare a new will for her, she asked where the residue of her estate would go, now that her daughter Mary was dead, and upon his informing her that it would go to Mrs. Gaskill and Nathan Buzby, she said that she did not wish Nathan to have any of it, and then gave the proponent her preceding will and told him to copy from it in the new will the clause in reference to Nathan, which is above set forth at length. Later in his testimony, however, in speaking of the provisions of the preceding will, he says that he thinks that by it $100 was bequeathed to Nathan.

Waddington admits that the preceding will was in his hands, but excuses the non-production of it by saying that he gave it back to Mrs. Buzby. It does not appear in the case, and there is no evidence as to its contents, save the testimony which the proponent gives.

If we may rely upon this testimony, the important changes from it were the recognition of Martha Hancock by a legacy of $600 and some of the household effects, the legacy to Waddington's son, and the substitution of his wife as residuary legatee, in place of the deceased daughter, Mary.

The testimony does not disclose that either of these persons was a beneficiary under this preceding will.

The only persons connected with the family who took part in or knew anything about the execution of the paper offered for probate were Martha Hancock, and Waddington, the executor, and the husband of the residuary legatee. The paper is in the handwriting of this husband, and he and Martha Hancock alone

account for its execution, for one subscribing witness is dead and the other fails to remember the transaction.

Waddington says that he received instructions for the preparation of the paper on the 15th of April, while Mrs. Gaskill was in Salem with his wife, and it appears that when the paper was signed, on April 20th, Mrs. Gaskill was visiting at Waddington's house by a special invitation from him or his wife.

The proponent and Martha Hancock come to the witness stand affected in credit by their interest in the establishment of the paper as the will—one because of a considerable legacy to her, and the other because of the bequest of more than one-half of the entire estate to his wife and son. Upon the rejection of this paper, neither of these beneficiaries will take a dollar from the estate. Some of the witnesses speak of having seen Martha Hancock and the proponent frequently together in apparently secret conversation at and about the time of the death of Mary Buzby and the making of this paper, and it is insisted that this circumstance is significant, when taken in connection with the fact that these two are the only members of the family who were present at the signing of the paper, and also at the clandestine signing of a códicil to the will prepared by Fogg on the night preceding Mary Buzby's death.

It is in proof that the night before Mary Buzby died, at about nine o'clock, George Waddington called upon Aaron Fogg and requested him to prepare a codicil to Mrs. Buzby's will. The proposed codicil in effect made Waddington's wife residuary legatee, in the place of her Aunt Mary. After the paper had been drawn, Waddington asked Fogg and his daughter to go with him to Mrs. Buzby's house and witness its execution. When they reached the house, Waddington opened the gate and led them to a side entrance, saying, " We will go this way ; mother [meaning Mrs. Gaskill] is up in the room ; we do not want her to know it." Mr. Fogg says that upon entering the dining room " they had a kind of a square table between the two windows, and there sat Ruth Buzby at one end of the table, with pen and ink prepared. I stepped up there and passed my hand across the table to her and shook hands with her, and asked her

how she was, but I do not remember whether she made me any reply or not. * * * I told her that George had come up for me to put a codicil to a will. * * * She did not say anything that I have any recollection of. I read it to her and told her if it were satisfactory she might put her name to it. I laid the paper down, and she took and signed it, after a good deal of difficulty." When the witness was asked what Mrs. Buzby's manner was during this interview, he replied that she was feeble and could not read much, that he told her that it was not necessary for her to read the codicil if she understood it, that she sat "in a sort of childlike study," and that "everything seemed to be a mechanical performance," and that she made no answer to this observation on his part. The witness says that he does not know that she understood what she was doing; all that she said at the interview was "yes," and that was when she was asked if she acknowledged the signature to be hers. Anna Fogg says that she was in the kitchen when the codicil was read to Mrs. Buzby, and when Mrs. Buzby and Aaron Fogg signed, and that after their signing, she came into the room, and Mrs. Buzby was then asked if it was her acknowledgment, and that then she (Anna) was asked to sign her name. She also says that Mrs. Buzby seemed to be "in a very absent-minded condition."

It appears that Mrs. Gaskill was in the house that night in attendance upon her dying sister, and that she passed through the dining-room to the kitchen, at some stage of these proceedings. She did not notice what was going on, and she was not consulted. Both Waddington and Martha Hancock are silent in their testimony as to this transaction, except that Waddington says that he does not remember making the remark he is said to have made to Fogg and his daughter as they entered the gate.

Twenty-three days later, Waddington and Hancock again, alone of all the family, were present at the signing of the paper now offered for probate. According to their account, the execution of it took place at about nine o'clock in the morning of April 20th, 1882, in the dining-room of Mrs. Buzby's house. Mrs. Gaskill, by invitation, was at Waddington's house, two and one-half miles away. Waddington says that he had pre-

pared the paper at his own house and brought it to Mrs. Buzby; that he read it to her and asked her if she understood it, and upon her replying in the affirmative, read it over to her again slowly and gave it to her, and then went out into another room and there talked with Martha Hancock for some time; that he then returned to Mrs. Buzby, who told him that she wanted witnesses; that she named Elijah Ware, Richard Hiles and Aaron Fogg; that he went out and got Ware and Hiles; that after he returned, as she was going to sign the paper, he said, "Grandmother, is thee fully aware of the contents of that will?" to which she answered, "Yes;" and he then said, "Does thee wish these witnesses to sign it?" and she said, "Yes;" and that then she signed the paper, and the witnesses also signed.

Martha Hancock says that, after the execution, Mrs. Buzby took the paper up stairs, and in about a half hour called her to come and tie up the box in which it had been put, in the way in which the box had been tied before. Both the proponent and Martha deny that they made any attempt to influence Mrs. Buzby to make a will, and deny that they conspired together to procure the execution of the paper offered for probate. Waddington says that his subsequent secrecy as to the existence of the will was at the request of Mrs. Buzby, and that every step in the execution of it was taken in obedience to previous suggestions by her.

The testimony of Martha Hancock is inconsistent and contradictory. It is proven that, after she declared that she was present at the execution of the paper, it was said by some one that that circumstance would be bad for Waddington, and she thereupon declared that she had not been present at the execution of the paper. When questioned at her examination as to this contradiction she denied it, but in the rebutting evidence she was contradicted in this denial by three credible witnesses. The orphans court rejected her testimony as unworthy of belief.

The making and execution of this paper was surrounded by *indicia* of undue influence.

The testatrix, an old woman, enfeebled in mind and body, nearly blind and scarcely realizing her surroundings, whose

Waddington v. Buzby.

daughter, her natural and recognized protector, and by law entitled to a large share of the residue of her estate, is called away from her side by a man who has prepared a will for her to execute.   This man is her business agent and adviser, in whom she places confidence, and, as well, is the husband of one of her granddaughters.   He presents to her for execution a will prepared by his own hand, in which he has written for his son a substantial legacy, for himself the executorship, and for his wife more than one-half of the estate.

As concomitants to this we have a woman acting with him, who also takes a considerable portion under the same instrument, and also the admitted facts that this man alone reads the paper to the testatrix, calls the witnesses to attest its execution, is the spokesman at that execution, puts questions that call for categorical answers only, and personally superintends every stage of the proceeding; also the facts that the woman who attends the execution ties the will up in the box in which the old lady's private papers were kept, in the same manner in which the box before then had been tied, and also that about twenty-three days before, these very two persons were secretly and at night engaged in a similar transaction in which substantially the same direction was sought to be given to the greater part of the estate, and that the old lady went through that transaction absent-mindedly, mechanically and apparently oblivious to her surroundings.

The establishment of these circumstances, if not conclusive against the validity of the paper offered for probate, at least throws the *onus* of showing the free agency of Mrs. Buzby in making it upon the proponent.

In *Rusling* v. *Rusling, 9 Stew. Eq. 603, 607*, Justice Dixon, who delivers the opinion of the court of errors and appeals, in speaking of the matters in proof which might influence the testator's testamentary purposes, says: "The first is the fact that the will in question was drawn by one of the favored legatees. While this circumstance does not of itself invalidate a will, it certainly is a matter which excites the judicial mind to suspicious scrutiny.   In *Den* v. *Gibbons, 2 Zab. 117, 137*, Chief-Justice

11

Green is reported to have said that, where the testator was very infirm and the will executed in the article of death, it had been rightly held that the preparation of the will by the principal legatee was conclusive against its validity. So other concomitants might readily be suggested which would give to the fact that the favored party had drafted the instrument almost irresistible force as evidence that the alleged testament was not the will of the deceased."

In *Paske* v. *Ollat, 2 Phillim. 323, 324,* Sir John Nicholl says: " By the Roman law *Qui se scripsit hæredem* could take no benefit under the will. By the law of England this is not the case : but the law of England requires, in all instances of the sort, that the proof should be clear and decisive;—the balance must not be left *in equilibrio;* the proof must go not merely to the signing, but to the knowledge of the contents of the paper. * * *

" The presumption and *onus probandi* are against the instrument, * * * and the *onus* of proof may be increased by circumstances; such as unbounded confidence in the drawer of the will; extreme debility in the testator; clandestinity, and other circumstances which may increase the presumption even so much as to be conclusive against the instrument." *Billinghurst* v. *Vickers, 1 Phillim. 187; Ingram* v. *Wyatt, 1 Hagg. 384; Marsh* v. *Tyrell, 2 Hagg. 84; Butlin* v. *Barry, 1 Curteis 614; Dale* v. *Dale, 11 Stew. Eq. 274; Delafield* v. *Parish, 25 N. Y. 9, 35; Tyler* v. *Gardiner, 35 N. Y. 559, 592.*

The proponent's testimony alone is insufficient to satisfy me that the instrument he offers for probate contains the free, spontaneous will of Mrs. Buzby. He is not assisted by the testimony of Martha Hancock. Her contradictions of herself and the falsehoods to which she resorted when she thought it to be to the proponent's benefit, justify the orphans court in refusing to believe her, and make her a wretched adjunct to one who comes into court with the burden above spoken of upon him.

If these circumstances which bear so heavily upon him are susceptible of explanation, it behooved him to see to it, when he engaged in his undertaking, that he had the necessary witnesses at hand to maintain the validity of the paper as a will. His

unsupported testimony will not justify the admission of the paper to probate as the will of Ruth W. Buzby.

The decree of the orphans court will be affirmed, with costs.